**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND DIVISION**

| | |
|---|---|
| BRIAN LINDSEY, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Civil Action No. 7:19-cv-00284-DC-RCG |
| v. | Judge David Counts |
| ONEOK, INC., | Magistrate Judge Ronald C. Griffin |
| *Defendant*. | |

**CLEVELAND INTEGRITY SERVICE'S MOTION TO INTERVENE AND
SUPPORTING BRIEF**

**I.      INTRODUCTION**

Brian Lindsey ("Lindsey") brings suit under the Fair Labor Standards Act ("FLSA") contending that ONEOK, Inc. ("ONEOK") denied him and others overtime pay.  Nick Doucet ("Doucet") has filed a consent to join this lawsuit pursuant to 29 U.S.C. § 216(b).  (*See* Dkt. 23.) But, Doucet was employed by and paid by Cleveland Integrity Services, Inc. ("CIS").

As Doucet's employer, CIS determined the central issues in his FLSA claim: his pay and his duties.  Plus, Doucet has an arbitration agreement with CIS that precludes his participation in this lawsuit.  CIS status as Doucet's employer and its arbitration agreement encompassing his claims justify both intervention as of right and permissive intervention.

Accordingly, pursuant to Federal Rule of Civil Procedure 24, CIS moves to intervene.

**II.     FACTUAL BACKGROUND**

**A.     ClS's Relationship with ONEOK**

CIS provides third-party inspection services for its customers and thus sends its inspectors to their projects. (Declaration of Michael Frye (attached as Ex. 1) at ¶ 3.)  This is comparable to a

1

CPA firm sending auditors to its clients.  In both instances, there is a compelling logic for having truly independent inspections done.

> Pipeline inspectors, like auditors, are hired to work independently, just like auditors:
>
> The Inspector acts as the Owner Company's authorized representative for non-financial matters, continuously observes the Contractor's progress and monitors all activities in their assigned areas in accordance with codes and standards; regulatory requirements; Owner Company safety and environmental requirements, drawings, plans, and specifications; as well as the terms of the construction contract or agreement. The Inspector may also be asked to assist other specialized Inspectors (e.g., Welding Inspector), as directed.

CEPA Foundation and the INGAA Foundation, <u>A Practical Guide for Pipeline Instruction Inspectors</u> 11 (Mar. 2016), <u>https://www.cepa.com/wp-content/uploads/2016/11/A-Practical-Guide-for-Pipeline-Construction-Inspectors-16Mar2016-FIN...1.pdf</u>. And, because this inspection work requires specialized personnel for only the duration of the project, these assignments are for a finite period.

ONEOK is one of CIS's customers. (Frye Declaration at ¶ 4.)  CIS controlled and directed its employees to provide the inspection services that ONEOKE requested. (Frye Declaration at ¶ 5.)  ONEOK paid CIS an all-inclusive rate to compensate it for the services it provided; that rate covered CIS's overhead, equipment, material, salary, benefits, vehicle allowance and applicable taxes and withholdings under state and federal law. (Frye Declaration at ¶ 6.)  From that amount, ONEOK, in its sole discretion, determined how much to pay each of its inspectors. (Frye Declaration at ¶ 6.)

### B.    CIS's Employment of Doucet

CIS employed Doucet as a Chief Inspector and assigned him to provide inspection services on its behalf to different CIS customers. (Frye Declaration at ¶ 7.)  On February 15, 2019, CIS assigned Doucet as a Chief Inspector to its team servicing ONEOK. (Frye Declaration at ¶ 8.)

Specifically, Doucet was assigned to the Beaver Tail Compression Station in Watford City, North Dakota. (Frye Declaration at ¶ 8.)  CIS assigned Doucet to another customer both before and after the ONEOK assignment. (Frye Declaration at ¶ 14.)   The assignment to ONEOK was from February 15, 2019 until March 9, 2019. (Frye Declaration at ¶ 14.)

As his employer, CIS determined Doucet's pay. (Frye Declaration at ¶ 12.)   CIS paid Doucet a "guaranteed minimum salary equal to four times the daily salary amount" based on FLSA regulations. (Frye Declaration at ¶¶ 12, 15.); *see* 29 C.F.R. § 541.604(b).  CIS also determined that Doucet's pay and duties qualified him as overtime exempt administrative and/or executive employee under the FLSA. (Frye Declaration at ¶ 13.); *see also* 29 U.S.C. § 213.

Before he was hired, Doucet agreed to be subject to CIS's employment policies and procedures. (*See* Frye Declaration at ¶ 10.)  In fact, during his hiring and onboarding process, Doucet signed or filled out *fifteen* separate documents identifying himself as an employee of CIS. (Frye Declaration at ¶ 11.)  These included an Internal Revenue Service ("IRS") W-4 Tax Form. (Frye Declaration, Ex. L.)

Significantly, Doucet also executed an arbitration agreement as a condition of his employment with CIS. (Frye Declaration at ¶ 9.)   Under that arbitration agreement, Doucet committed to "arbitrate all claims that have arisen or will arise out of Employee's employment with or termination from the Company." (Frye Declaration, Ex. B at ¶ 2.)  Doucet also agreed that "there shall be no class actions, collective actions, or multiple-employee claims of any kind." (Frye Declaration, Ex. B at ¶ 2.)

## III.   ARGUMENT

Lindsey's lawsuit alleges that he and those similarly situated were denied statutory overtime pay in violation of the FLSA.  The central issue in Doucet's case is whether he was overtime exempt under the FLSA.  But, rather than demanding arbitration with the entity that hired

him, that determined he was overtime exempt, and that paid him (CIS), Doucet joins this lawsuit against CIS's customer (ONEOK). Because CIS was his actual employer, Doucet can only hold ONEOK liable if it can show that ONEOK *also* employed him as a joint employer with CIS. Absent joint employment, Doucet has no claim against ONEOK. *See, e.g*., *Lundine v. Gates Corp.*, No. 18-1235-EFM, 2020 WL 1862578 (D. Kan. April 14, 2020) (dismissing FLSA claim by individual who was hired and paid only by staffing company, not the staffing companies customer she sued).

CIS's status as Doucet's actual employer (and potential joint employer with ONEOK) provides more than a sufficient interest to intervene. CIS has an interest in enforcing Doucet's commitment to arbitrate his FLSA claims as well as an interest in defending against Doucet's claim challenging its decision to classify him as overtime exempt under the FLSA. Permitting this lawsuit to go forward without CIS's participation would deprive CIS of these interests.

Therefore, CIS moves to intervene pursuant to Rule 24(a) and 24(b).[1]

## A.    Rule 24(a)(2): Intervention As Of Right

CIS's intervention is warranted. In fact, three other courts addressing the exact same scenario as here (FLSA suits brought by Doucet's counsel and brought against the actual employer's customer) have granted intervention to the actual employer. *Robertson v. Enbridge (U.S.) Inc*., No. 2:19-cv-01080-WSS-LPL, Dkt. 98 (W.D. Pa. Apr. 13, 2020) (attached as Ex. 2), *report and recommendation adopted* No. 2:19-cv-01080-WSS-LPL, Dkt. 111 (W.D. Pa. May 1, 2020) is illustrative.

---

[1] Further, pursuant to Rule 24(c), CIS attaches as Exhibit 5 a motion to compel arbitration, seeking to enforce Doucet's commitment to arbitrate his employment claims. *See, e.g., U.S. ex rel. Frank M Sheesley Co. v. St. Paul Fire and Marine Ins. Co.*, 239 F.R.D. 404, 414 (W.D. Pa. 2006) (motion to compel arbitration satisfies Rule 24(c)). CIS will file a motion to compel arbitration upon the Court's approval of its intervention.

There too, the plaintiff (an inspector like Doucet represented by Doucet's counsel) took the same tactic: bringing an FLSA lawsuit against a customer of CIS.  The district court there rightly granted CIS's motion to intervene:

> They [CIS and another pipeline inspection services company] hired the subject employees, they determined how much to pay them, and they determined that they were exempt from overtime pay.  They provided the employees to the named Defendant.  The potential Intervenors appear at this stage to fit at least three out of the four relevant factors of being qualified as joint employers with Enbridge under the Third Circuit's definition.  Regardless of the indemnity issue, which the Court finds does not have to be proven at this time, they stated a sufficient interest in the litigation.  In addition, these potential employees, and others who may opt in later, have either agreed to a forum selection clause or arbitration agreement, both of which are being circumvented given that a joint employer of theirs was not named.

*Id*. at 6.

Similarly, *Snow v. Silver Creek Midstream Holdings LLC*, No. 2:19-cv-00241, Dkt. 30 (D. Wyo. Mar. 3, 2020) (attached as Ex. 3) and *Ferrell v. SemGroup,* No. 4:19-cv-00610-GKF-JFJ, Dkt. 63 (N.D. Okla. June 12, 2020) (attached as Ex. 4) confronted the same exact issue: an FLSA lawsuit brought (again by Doucet's counsel) not against the pipeline inspection services company that was the actual employer, but rather against that company's customer.

Those courts also granted the pipeline inspection services company's intervention:

- "[t]he Court finds the potential for Silver Creek [customer] to claim Applied [pipeline inspection services company] is Plaintiff's sole employer, or even a joint employer, establishes a protectable interest." *Snow,* Ex. 3, at 6.

- "[t]he court concludes that TIR's [pipeline inspection services company] potential liability as a joint employer and indemnity made upon it are sufficiently protectable interests which may be impaired if TIR is not permitted to intervene." *Ferrell*, Ex. 4, at 7.

The logic of *Robertson, Snow,* and *Ferrell* apply equally here.  Indeed, those cases applied

the same test that governs intervention in the Fifth Circuit. *Sierra Club v. Espy*, 18 F.3d 1202, 1204-05 (5th Cir. 1994) (intervention is awarded if a party satisfies the following requirements: "(1) [t]he application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that disposition of the action may, as **a practical matter**, impair or impeded its ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.") (emphasis added).

As illustrated by *Robertson, Snow,* and *Ferrell*, CIS meets all four *Espy* requirements.

**First**, CIS's motion is timely; intervention filed just over a month after Doucet's opt-in and before substantive motion practice is more than early enough. *See, e.g., Coronado v. D. N. W. Houston, Inc*., Civil Action No. H-13-2179, 2015 WL 13812297, at *5-6 (S.D. Tex. Dec. 23, 2015) (intervention timely where it was filed with "reasonable promptness" after learning of interest in the case and where "discovery is in an early phase" because "only one deposition had been taken and no substantive motions on the merits had been filed").

**Second**, CIS has an interest in this case on multiple levels:

**i.**     The core issue is whether Doucet's pay and duties qualified him for overtime exempt status under the FLSA.  CIS has an obvious interest in the adjudication of this issue because, as his employer, it set his job as overtime exempt and exclusively controlled his pay. Further, any liability resulting is joint and several among joint employers. *See* 29 C.F.R. § 791.2(f) (providing "that [a] joint employer is jointly and severally liable with the employer and any other joint employers for compliance with all of the applicable provisions of the [FLSA], including the overtime provisions . . .").  The potential that CIS (Doucet's actual employer) may be jointly liable with ONEOK (if Doucet is able to show that ONEOK also employed him) is a legally sufficient

interest for intervention. *Kansas Public Emp. Retirement Sys. v. Reimer & Kroger Assoc.*, *Inc*., 60 F.3d 1304 (8th Cir. 2004) (granting intervention; the potential of joint and several liability was sufficient to allow intervention).[2]

**ii**.     CIS not only has an interest in vindicating its proper classification of Doucet as overtime exempt but also has a distinct interest in enforcing Doucet's arbitration agreement. Moving forward without CIS could result in Doucet being able to avoid the arbitration forum in which he committed to bring his individual employment claims. *See Snow v. Silver Creek Midstream Holdings LLC*, No. 2:19-cv-00241, Dkt. 41 (D. Wyo. Mar. 3, 2020)  (attached as Ex. 5) (granting a motion to compel arbitration because the arbitration agreement -- which contains the exact same language and structure as Doucet's -- required arbitration of all employment claims, regardless of whom they were brought against).  This would deprive CIS of the benefit of the bargain it struck with Doucet: in exchange for paying Doucet significant compensation, CIS assured itself of "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010).

**Third**, disposing of this action without CIS would impair those interests.  Most pointedly, its ability to defend against Doucet's claims that his compensation ran afoul of the FLSA would be, **as a practical matter**, drastically limited.  If CIS -- the entity that set and paid Doucet's salary; determined that he was eligible for exempt status; and maintains the employment records on which his case is predicated -- is excluded, it would be deprived of the "opportunity to raise arguments

---

[2] *Blundell v. Home Quality Care Home Health Care*, *Inc*., No. 3:17-cv-1990-L-BN, 2017 WL 5889715, at *3-4, 6 (N.D. Tex. Nov. 29, 2017) illustrates the potential risk to a joint employer.  There, the court stayed all proceedings in a FLSA suit against all joint employers after one joint employer filed a notice of bankruptcy because "[i]t is possible that a judgment under the FLSA against the [non-bankrupt joint employers] . . . would affect, and perhaps could be held binding on, the debtor [bankrupt joint employer's] estate." *Id*.  That risk not only warranted a stay in that case but also manifestly establishes the practical interest for intervention here.

and defenses before adjudication of its own liability to Plaintiff." *Clean Earth, Inc. v. Endurance Am. Ins.*, Civil Action No. 15-6111 (FLW), 2016 WL 5422063, at *4-5 (D.N.J. Sept. 28, 2016) (granting motion to intervene where the intervenor could be held liable without having opportunity to dispute that liability; the intervenor's interest in raising its defenses was impaired and could not be cured "simply because [the intervenor] has an opportunity to defend against an indemnification claim by [the defendant]").  Further, if CIS is unable to defend its practices and ONEOK suffers an adverse judgment, that judgment could be viewed by CIS's other customers as an adverse judgment against CIS. *See Uniloc 2017 LLC v. AT&T Mobility, LLC*, No. 2:18-CV-00514-JRG, 2019 WL 1773117, at *3 (E.D. Tex. Apr. 23, 2019) (granting intervention because patent infringement allegations against the manufacturer-intervenor's customer put the manufacturer's "customer base and reputation at risk").

**Fourth**, CIS's interest is not adequately represented by the existing parties.  As *Robertson* recognized, "[a]lthough the interests of [CIS] are like those of [ONEOK], they diverge in that [CIS is] the entit[y] that determine and cut the paychecks; they also have employment contracts with the opt-in plaintiff[] that [ONEOK] does not." *Robertson*, Ex. 2 at 8.  ONEOK did not classify Doucet as exempt, nor write his paychecks. CIS' absence will result in" its "interests being inadequately represented." *Advanced Dynamic Interfaces, LLC v. Aderas, Inc.*, C.A. No. 12-cv-963 (GMS), 2013 WL 6989428, at *1 n.1 (D. Del. Jan. 11, 2013) (granting intervention in a patent suit brought against intervenor's customer because the company was the creator and manufacturer of the products at issue).

Moreover, CIS is one of multiple companies engaged by ONEOK to provide inspection services.  There is a genuine risk that ONEOK may make tactical litigation decisions that favor other entities or itself at a sacrifice to CIS or even choose to settle in a manner that disadvantages

CIS. *See Adam Joseph Resources v. CAN Metals Ltd.*, 919 F.3d 856, 868 (5th Cir. 2019) (inadequacy of representation illustrated by a settlement that disadvantaged the intervening party). ONEOK's failure to raise Doucet's arbitration agreement is *prima facie* proof of that and demonstrates its inadequacy to represent CIS's interests.

### B.        Rule 24(b)(1)(B): Permissive Intervention

Even if there could be doubt about intervention as of right, CIS is entitled to intervene as a matter of permission on those same considerations.   Rule 24(b)(1)(B) allows permissive intervention to anyone who timely asserts "a claim or defense that shares with the main action a common question of law or fact."  Both are met here.

There are undeniably **common questions of law**: *e.g.*, the enforcement of Doucet's arbitration commitment.  That common issue in and of itself warrants intervention. *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 27 (D.D.C. 2002) (granting permissive intervention in a trade secrets suit to the customer of both parties where the lawsuit questioned whether the customer conspired with the defendant to disclose trade secrets because, in part, the customer and the plaintiff had an arbitration agreement and both the customer and defendant argued that arbitration should be compelled); *Robertson*, Ex. 2, at 10 (determining whether a court is the proper forum for an FLSA claim given an arbitration agreement is a common question of law).

There are also **common questions of fact**.  The central issue in this suit is whether Doucet's pay and duties qualify him as overtime exempt under the FLSA.  These questions cannot be resolved without addressing the actions of CIS, which paid his salary and determined that his duties and salary met the administrative exemption requirements under the FLSA.  CIS asserts a defense -- that it properly classified Doucet -- that shares common facts with any argument ONEOK may make on the merits. *Robertson*, Ex. 2, at 11 (deciding that "[a]ny determination that

Enbridge [the sued customer] violated the law would be based on the joint employment relationship, which would implicate the potential Intervenors" such that there are common questions of fact weighing in favor of permissive intervention).

Put differently, a full airing of the facts upon which liability depends is not possible without the participation of Doucet's actual employer: CIS. *See Snow*, Ex. 3, at 10 (determining that allowing the actual employer -- also an inspection services company -- in an FLSA suit brought against that company's customer "adds value and significantly advances the full and complete development of the factual and legal issues raised in the underlying action").

## IV.  CONCLUSION

For these reasons, CIS should be allowed to intervene in this case.

Date: June 29, 2020

Respectfully submitted,

Cleveland Integrity Services, Inc.

/s/ Nicole Figueroa
Nicole Figueroa
McDermott Will & Emery LLP
2501 N. Harwood Street
Dallas, Texas 75201
(214) 295-8062 (phone)
(972) 767-0190 (fax)
nfigueroa@mwe.com

Rachel B. Cowen, *pro hac vice forthcoming*
McDermott Will & Emery LLP
444 West Lake Street
Chicago, Illinois 60606
(312) 372-2000 (phone)
(312) 884-7700 (fax)
rcowen@mwe.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned does certify that on the 29th day of June 2020, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the applicable ECF registrants.

/s/ Nicole Figueroa

Nicole Figueroa