**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| BRIAN LINDSEY, Individually and for Others Similarly Situated, | |
| v. | Case No. 7:19-cv-00284-DC-RCG |
| ONEOK, INC. | |

**PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND RELEASE AND DISMISSAL OF LAWSUIT WITH PREJUDICE**

Plaintiff Brian Lindsey ("Lindsey")) submits this Unopposed Motion for Approval of Settlement Agreement and Release and Dismissal of Lawsuit with Prejudice. The Settlement Agreement and Release (the "Agreement"), a copy of which is attached at Exhibit A, entered into by and between Lindsey and Defendant ONEOK, Inc. ("ONEOK," together with Lindsey, the "Parties") represents a fair and reasonable resolution of a *bona fide* dispute between Lindsey and the Settlement Class Members (as defined in the Agreement and below), on the one hand, and ONEOK, on the other, under the Fair Labor Standards Act ("FLSA"). Lindsey therefore respectfully asks the Court to approve the Agreement in its entirety and dismiss this lawsuit with prejudice.[1]

The Agreement provides Plaintiffs and the Settlement Class Members with a reasonable recovery in light of the risks inherent in continued litigation and trial. ONEOK has defended the claims asserted in this Lawsuit and continues to deny that it employed Lindsey or any of the other Settlement Class Members and that it committed any wrongdoing or violated any state or federal wage and hour law in any respect, including the FLSA. The costs, risks, and delays inherent to protracted and continued litigation balanced against the benefits of this Settlement, demonstrate that the

---

[1]    All capitalized terms shall have the meaning ascribed to them in the Agreement, unless otherwise defined in this motion. Any disparities or inconsistencies between the terms of this motion and the Agreement shall be resolved by reference to and in favor of the terms of the Agreement.

Agreement is in the best interest of the Settlement Class Members and should be approved and the Lawsuit dismissed.

## 1.    PROCEDURAL HISTORY

Lindsey filed this putative collective action on December 11, 2019 on behalf of himself and all other alleged similarly situated workers whom Lindsey contends ONEOK misclassified as independent contractors and paid a day rate with no overtime compensation in violation of the FLSA (the "Putative Class Members").   ECF 1.  ONEOK denies Lindsey's allegations in the Lawsuit and specifically denies that it employed Lindsey or any of the Putative Class Members whom he purports and seeks to represent, which encompass the Settlement Class Members, and denies that it has violated the law in any respect, including the FLSA. ECF 10. After ONEOK made an appearance in this matter, the Parties spent the next year litigating intervention motions, conducting depositions of multiple witnesses, exchanging extensive written discovery, including thousands of pages of document production, and briefing a motion for conditional certification.

On January 21, 2021, the Parties jointly moved to stay all proceedings and deadlines in this case for 60 days pending their exchange of class data and mediation. ECF 80. The Parties further agreed to toll the statutes of limitations applicable to the alleged Collective Class Members' claims against ONEOK for unpaid overtime compensation under the FLSA for a period beginning January 13, 2021 until mediation on March 1, 2021. *Id.* On February 4, 2021, the Court granted the Parties' request, stayed all proceedings and deadlines for 60 days (until April 5, 2021) and equitably tolled the limitations period per the Parties' request. ECF 86. The Court further ordered the Parties to submit a Joint Status Report regarding the status of their settlement negotiations following their mediation. *Id.* On March 1, 2021, the Parties attended a full-day mediation with experienced wage and hour mediator, Michael Dickstein. While the Parties were unable to reach a resolution of this action at their mediation,

the Parties continued settlement negotiations and notified the Court on July 21, 2021 that they had

reached a resolution of the case. ECF 105.

On November 12, 2021, the Parties executed the Agreement, which Lindsey now requests

that the Court approve.

## 2. <u>KEY TERMS OF SETTLEMENT</u>

Under the Agreement, ONEOK agrees to pay a Maximum Settlement Amount of

$2,000,000.00 to settle the claims of up to 750 of the alleged Putative Class Members, inclusive of

Lindsey and the Current Opt-Ins, (collectively, the "Settlement Class Members"). claims. The

Maximum Settlement Amount covers all of the wage and hour claims of the Settlement Class

Members, a Fee Award to Class Counsel of up to forty percent of the Maximum Settlement Amount,

a Cost Award to Class Counsel of up to $25,000.00, Administrative Costs to the Claims Administrator

of up to $40,000.00, and a Service award to Lindsey of up to $7,500.00 for his services as the Class

Representative. The "Net Settlement Amount" is the amount remaining to be distributed to the

Settlement Class Members after the Fee Award, the Cost Award, the Administrative Costs, and the

Service Award are deducted from the Maximum Settlement Amount.

Each of the Settlement Class Members' respective Individual Settlement Payments will be

determined on a *pro rata* basis based on the Parties' best estimate of the number of Covered

Workweeks each Settlement Class Member worked on a ONEOK project during the Covered Period.[2]

In exchange for their respective Individual Settlement Payments, and for the other consideration

detailed in the Agreement, the Settlement Class Members who timely negotiate their Settlement Check

---

[2]       The Parties will estimate each Settlement Class Members' respective Individual Settlement Payment by reference to records they have and are able to obtain from the following Vendor Companies: (1) FIS Operations, LLC d/b/a Frontier Integrity Solutions; (2) Cleveland Integrity Solutions, Inc., (3) Onshore Quality Control Specialists, LLC (now Workrise Technologies, Inc.), (4) Orion Industrial Services, and (5) Cypress Environmental Management – TIR, LLC.

and become Settlement Participants shall release the Released Parties[3] from:  any and all claims, obligations, demands, actions, rights, causes of action, and liabilities against the Released Parties, of whatever kind and nature, character, and description, whether known or unknown, and whether anticipated or unanticipated, arising under state and local law, whether in law or equity, whether sounding in tort, contract, statute, common law, or other applicable law or regulation including claims that the Settlement Participant does not know of or suspect to exist in his or her favor, that accrued during the Covered Period, for any type of relief, including without limitation, claims for wages, damages, premium pay, unpaid costs, expenses, penalties (including waiting time penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, or relating to pay, based on the following categories of allegations: (a) all claims under applicable state or local laws and regulations for the failure to timely pay any type of overtime compensation or other wages (including but not limited to "straight time" wages, minimum wage, late payments of wages, and/or business expenses); (b) all claims arising under any applicable state or local laws or regulations for the failure to provide or pay for meal periods and/or rest periods; (c) all claims under applicable state or local laws or regulations, including, but not limited to, alleged recordkeeping violations stemming from or based on alleged misclassification; (d) all claims arising under any applicable or local laws or regulations for the failure to furnish accurate, itemized wage statements or other notices; (e) all claims arising under any common law theory for failure to provide some or all wages due, including, but not limited to, claims brought under the theories of quantum meruit or unjust enrichment; and all claims for penalties or additional damages arising from the claims described in (a) through (e) inclusive above under applicable state or local law.  As discussed throughout, the Parties agreed to a *pro rata* allocation of the Net Settlement Amount based on the number of Covered Workweeks worked by the Settlement Class Members during the Covered Period. To calculate the *pro rata* settlement

---

[3]    The Vendor Companies are excluded from the definition of Released Parties in the Agreement.

allocations, the Parties calculated ONEOK's share of each Settlement Class Member's alleged back wages under the FLSA based on the number of Covered Workweeks they worked during the Covered Period using data the Parties obtained from the Vendors Companies. Using this model, the Claims Administrator will apply each Settlement Class Member's *pro rata* share to the Net Settlement Amount to determine each Settlement Class Member's Settlement Payment.

Within Fifteen days of the Effective Date following the Court's approval of the Agreement and dismissal of this Lawsuit with Prejudice, the Claims Administrator will send a Notice to each of the Settlement Class Members along with a Settlement Check in the amount of his or her Individual Settlement Payment. *Id.* at ¶ 8.2. The Notice, which is attached at Exhibit 2 to the Agreement, includes, among other things, a summary of the Lawsuit, the amount of the Settlement Class Member's Settlement Check, instructions regarding how to participate in the Settlement and become a Settlement Participant, and the effect of becoming a Settlement Participant, including the Released Claims a Settlement Participant will release against the Released Parties. Ex. 1-2.  The Consent language, which is attached at Exhibit 3 to the Agreement, on each Settlement Check further apprises the Settlement Class Members of the effect of negotiation the Settlement Check and electing to become a Settlement Participant.  Lindsey respectfully asks the Court to approve the Notice and the Consent along with the Agreement.

Lindsey, the Current Opt-Ins, and those Settlement Class Members who execute their settlement checks within 90 days of the Mailing Date and become a Settlement Participants will  release all Released Claims against all Released Parties. *Id.* at Ex. 1-2.

To be clear, the Settlement Participants are only releasing the Released Claims against the Released Parties, and any claims they may have against the Vendor Companies are expressly preserved. *Id.* However, if one or more Settlement Participants asserts a claim against one or more of the Vendor Companies for the same work and workweeks performed on a ONEOK project during the Covered

Period, the amount of such damages sought or recoverable from one or more Vendor Companies shall be reduced and offset by the sum of any payments made to such Settlement Participants under this Settlement. The Agreement is intended to constitute a complete discharge of any and all liability of the Released Parties to the Settlement Participants and result in a reduction of the damages recoverable from the Vendor Companies to the fullest extent permitted by applicable law. *Id.*

Finally, within five (5) business days of the Effective Date, ONEOK will wire the Maximum Settlement Amount to the Claims Administrator who, at ONEOK's request, shall deposit it into a Qualified Settlement Fund ("QSF"). Ex. 1 at ¶ 7.2.  Only Lindsey, the Current Opt-Ins, and the Settlement Class Members who timely negotiate their respective Settlement Checks during the Negotiation Period will be bound by the terms of the Settlement and release the Released Parties from all Released Claims.

### 3.      LEGAL STANDARD

"If the settlement reflects 'a reasonable compromise over issues,' the court may approve it." *Graham v. Jet Specialty, Inc.,* No. MO-15-CV-135-DAE, 2016 WL 7479956, at *1 (W.D. Tex. May 11, 2016)(citing *Villeda v. Landry's Rests., Inc.*, No. H-08-2287, 2009 WL 3233405, at *1 (S.D. Tex. Oct. 7, 2009). The settlement must therefore be a fair and reasonable resolution of the Parties' bona fide dispute under the FLSA.  *See Lynn's Food Stores*, 679 F.2d at 1355.

### 4. THE COURT SHOULD APPROVE THE AGREEMENT AND DISMISS THE LAWSUIT WITH PREJUDICE.

Lindsey now seeks the Court's approval of the Agreement along with the Notice and Consent. The Agreement represents a fair and reasonable compromise of a bona fide dispute concerning the legality of ONEOK's compensation practices with respect to Lindsey and the Settlement Class Members.

**A.  A Bona Fide Dispute Existed Between the Parties.**

The Agreement resolves a bona fide dispute. In the instant case, the Parties contested the claims and defenses asserted. Lindsey alleged that ONEOK misclassified the alleged Putative Class Members as independent contractors in order to avoid paying them overtime as required by the FLSA. ONEOK argued, among other things, that it did not owe Lindsey or any of the Putative Class Members whom he purports and seeks to represent overtime compensation because it did not employ them under the FLSA and alternatively, that Lindsey and the alleged collective class members were properly classified as exempt from the overtime requirements of the FLSA based on the duties they performed even if ONEOK were found to be their employer.

Further, as detailed further below, this case was settled after over a year and a half of litigation and extensive work by the Parties and their counsel. Prior to the filing of this suit, Class Counsel performed extensive research and investigation regarding ONEOK's pay practice, potential liability, independent contractor status of the consultants, potential settlement, and whether ONEOK acted in good faith (or willfully) in its independent contractor classification of the Settlement Class Members. After Lindsey initiated the Lawsuit, the Parties conducted depositions of multiple witnesses and exchanged extensive written discovery, including thousands of pages of document production, and fully briefed Lindsey's Motion for Conditional Certification and Court-Authorized Notice. The Parties worked to resolve various complex, disputed issues, such as issues regarding conditional certification, numerous discovery disputes, tolling, and damages calculations. And if the case were not settled, there would be extensive work to come, including dispositive motions, a renewed request for conditional certification, a motion for decertification of any conditionally certified collective class, additional depositions, associated discovery disputes, questions regarding applicability of the FLSA, good faith, willfulness, pretrial motions, trial, and potential appellate issues. The Parties therefore engaged in significant work, recognize and appreciate the risks and costs associated with continued

litigation should this case not settle, and recognize that the proposed Settlement represents a compromise based on the reasonable range and odds of potential outcomes and damages.

If the matter was not resolved by settlement, there was a risk that Lindsey would not succeed in pursuing collective treatment of the Lawsuit. Moreover, even if Lindsey achieved conditional certification under the Fifth Circuit's new *Swales* standard,[4] ONEOK intended to move for decertification of the collective class following additional discovery, a process that would have been time consuming and expensive for all Parties.

Throughout the litigation, ONEOK denied the material facts and any violation of the FLSA, and vigorously defended its position. These facts demonstrate a bona fide dispute between the Parties.

### B. The Settlement is Fair and Reasonable.

"There is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, Case No. 09-682, 2010 WL 1688793, at *1 (M.D. La. Apr. 26, 2010) (citing *Camp v. Progressive Corp.*, Case Nos. 01-2680, 03-2507, 2004 WL 2149079, at *5 (E.D. La. Sept. 23, 2004)). In addition, the fact "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id.*

Class Counsel has considerable experience prosecuting and settling FLSA cases, and in this case, were particularly well-informed as to the facts and circumstances of the litigation and the risk of not prevailing at trial. *See Cotton v. Hinton*, 559 F. 2d 1326, 1330 (5th Cir. 1977) (holding that the court is "entitled to rely upon the judgment of experienced counsel for the parties" in assessing a settlement and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel"); *Shaw v. CAS, Inc.*, No. 5:17-cv-142, 2018 WL 3621050, at *3 (S.D. Tex. Jan. 31, 2018) (preliminarily approving settlement where counsel believed settlement was reasonable and adequate

---

[4] Importantly, prior to the Parties' resolution of this matter, the Court denied Plaintiff's Motion for Conditional Certification and Court-Authorized Notice without prejudice to allow the Parties to come into conformity with the new *Swales* standard. ECF 82.

based on "comprehensive knowledge of the facts and legal issues"); *Liger v. New Orleans Hornets NBA Ltd. P'ship*, No. 05-1969, 2009 WL 2856246, at *4 (E.D. La. Aug. 28, 2009) ("The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a . . . settlement.") (internal citations omitted). Class Counsel has served as lead counsel in numerous large-scale wage and hour class/collective actions. *See, e.g., Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183 (6th Cir. 2017) (reversing trial court's grant of summary judgment in favor of defendant); *Roussell v. Brinker Int'l, Inc.*, 09- 20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011) (affirming jury verdict in FLSA collective action); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006) (affirming summary judgment in favor of a nationwide class of FLSA plaintiffs).

Lindsey, as Class Representative, and Class Counsel both believe approval of the Agreement is in the Settlement Class Members' best interest and that the Agreement is fair and reasonable.

### i.       The Agreement was Fairly and Honestly Negotiated

Here, the Agreement was the product of arms' length negotiations among experienced counsel. The settlement was reached after the Parties engaged in extensive discovery over many months regarding Lindsey's and the Current Opt-Ins payroll records, time sheets, training records, and daily inspection reports and ONEOK's pay and business practices, quality management goals, quality control documents, rate sheets, work orders,  and facility audit(s),, followed by prolonged settlement negotiations which also spanned many months and involved the exchange of additional information on an informal basis.

### ii.       The Ultimate Outcome of the Ligation was Unknown

As outlined above, the Parties disagree about the merits of Plaintiffs' claims and the viability of ONEOK's defenses. The Parties dispute whether ONEOK employed Lindsey and the alleged Putative Class Members, whether Lindsey and the alleged Putative Class Members are entitled to unpaid overtime under the FLSA, the hours Lindsey and the alleged Putative Class Members worked

each week, whether ONEOK acted in good faith and thus whether liquidated damages are appropriate, and whether ONEOK acted willfully, which would affect whether Plaintiffs may recover under a two-year or three-year statute of limitations. The proposed Settlement allows the Parties to resolve these matters instead of litigating these uncertain legal and factual issues.

If the litigation had continued, the Parties would have faced obstacles and uncertainties, including the outcome of a motion for collective action certification, summary judgment, a motion for decertification, and potentially a trial on the merits of unknown size and scope.

A trial on the merits would involve significant risks as to liability. Even if Lindsey could maintain a collective throughout trial, he would have to defeat ONEOK's argument that it did not employ him and the alleged Putative Class Members and that, even if it did, Lindsey and such Putative Class Members were properly classified as exempt from overtime under the FLSA based on the duties they performed. Cases like this one are, almost by nature, risky because "employee status is very fact dependent." *Carrell v. Sunland Const., Inc.*, 998 F.2d 330, 334 (5th Cir. 1993) (finding welders to be independent contractors as a matter of law). Workers can, and do, lose these cases in court. *See, e.g., Safarian v. Am. DG Energy, Inc.*, No. 17-1641, 2018 WL 1617660, at *5 (3d Cir. Apr. 4, 2018) (engineer who worked for defendant "almost exclusively," five days per week over the course of three years, was an independent contractor); *Karlson v. Action Process Serv. & Private Investigations, LLC*, 860 F.3d 1089 (8th Cir. 2017) (process server who worked for process serving company for more than 6 years was an independent contractor, not an employee); *Yue Yu v. McGrath*, No. 14-1842, 2014 WL 7384328 (3d Cir. Dec. 30, 2014) (hourly worker was independent contractor not employee); *Alexander v. Avera St. Luke's Hosp.*, 768 F.3d 756, 760 (8th Cir. 2014) (long term hospital worker was independent contractor, not employee); *Thibault v. Bellsouth Telecommunications, Inc.*, 612 F.3d 843 (5th Cir. 2010) (hourly worker employed in emergency response was independent contractor and had no breach of contract claim).

Even cases approved by the Department of Labor and the Solicitor's Office are lost. The Department of Labor has lost several independent contractor cases. In one case, the Department of Labor asserted the workers were owed $6 million in back wages. But when the case went to Court, the workers lost outright and got nothing. *Gate Guard Servs. L.P. v. Department of Labor,* No. CIV.A. V-10-91, 2013 WL 593418 (S.D. Tex. Feb. 13, 2013). Later, the Department of Labor was sanctioned for bringing the case. *Gate Guard Servs., L.P. v. Perez,* 792 F.3d 554, 556 (5th Cir. 2015). And in *Herman v. Express Sixty-Minutes Delivery Serv., Inc.,* more than 100 contractors got nothing when the Department of Labor lost their case in court. *Herman v. Express Sixty-Minutes Delivery Serv., Inc.,* 161 F.3d 299, 302 (5th Cir. 1998). Although Lindsey believes these cases are distinguishable from this case, and that he could ultimately establish ONEOK's liability, this would require significant factual development and considerable risk.

Furthermore, even if Lindsey ultimately prevailed on the issue of employment status, it would still have to defeat ONEOK's affirmative defense that these workers were exempt under the executive, administrative, professional and/or highly compensated employee exemptions. Despite the Fifth Circuit's ruling in *Hewitt v. Helix Energy Solutions Group, Inc.,* if ONEOK were to show it or the Vendor Companies  paid a guarantee of at least the minimum weekly required amount, regardless of the number of hours, days or shifts worked, and that a reasonable relationship existed between the guaranteed amount and the amount actually earned, ONEOK could have arguably been able to show that Lindsey and the alleged Putative Class Members were not entitled to overtime compensation. Finally, after overcoming all of these obstacles, Lindsey would still need to prove the amount of damages suffered.

### iii.    The Value of the Settlement is Significant

The benefit that the Settlement Participants will receive under the Settlement is substantial when compared against the maximum they could have received if they had prevailed at trial.

The Parties had numerous disputes, including (1) whether ONEOK employed Lindsey or any of the alleged Putative Class Members; (2) whether Lindsey or any of the alleged Putative Class Members were properly classified as  exempt from overtime under one or more exceptions to the FLSA's overtime requirements based on the duties they performed; (3) the number of hours Lindsey and the alleged  Putative Class Members worked each week; (4) whether ONEOK's alleged FLSA violations were made in good faith; and (6) whether ONEOK's alleged FLSA violations were willful. The resolution of each of these issues had the potential to eliminate or prejudice the litigation in ONEOK's favor.

In spite of the hotly contested case, the Settlement provides the Settlement Class Members with an average recovery from the Maximum Settlement Amount of approximately $2,700. Further the Settlement represents approximately 36% of the three-year back wage amount and 47.5% of the two-year back wage amount.  Considering the settlement only covers ONEOK's liability, this is a substantial recovery considering the ongoing risks of litigation, the defenses at issue, and the real possibility of a protracted fight for unpaid overtime. Further, because the scope of the Settlement (and release) is limited to only ONEOK, the Settlement Class Members have not given up any of their rights to recover additional unpaid overtime from the Vendor Companies should they elect to do so.

As such, the recovery before the Court is an outstanding result and more than fair and reasonable. In the present case, the proposed Agreement will provide Individual Settlement Payments to the Settlement Class Members representing a substantial percentage of their claimed damages as calculated by the Parties. The proposed method of allocation (individual payments proportionate to their claimed damages) is fair to all. *Lazy Oil Co. v. Witco,* 95 F. Supp. 2d 290, 339 (W.D. Pa. 1997) (approving 35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D. Ga. 1993) (12.7% to 15.3%); *In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement

and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted); *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942, 988 (E.D. Tex. 2000) (citing study conducted by the National Economic Research Associates: "the average result achieved for class members was only 7% to 11% of claimed damages.").

Furthermore, as part of the Agreement, Settlement Participants will only be releasing the Released Parties from liability and will not be releasing from liability any of the Vendor Companies that staffed them to ONEOK. As discussed *supra*, the Vendor Companies 1) FIS Operations, LLC d/b/a Frontier Integrity Solutions; (2) Cleveland Integrity Solutions, Inc., (3) Onshore Quality Control Specialists, LLC (now Workrise Technologies, Inc.), (4) Orion Industrial Services, and (5) Cypress Environmental Management – TIR, LLC are <u>not</u> being released and should any of the Settlement Participants elect to recover additional unpaid overtime from them, they have not given up any of their rights to do so.

The quality of this result speaks for itself, and no further analysis, or speculation about net expected value, is required. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863-864 (7th Cir. 2014).

### iv.    Lindsey and Class Counsel Support the Settlement

Class Counsel has comprehensive knowledge of the facts and legal issues relating to the applicable claims and defenses and has ample evidence on which to base an informed assessment of

the proposed Agreement. Based on Class Counsel's knowledge of the case and the applicable law, as well as their experience in numerous similar wage and hour collective actions, Plaintiffs' Counsel believes the Agreement is fair and reasonable. This factor supports approval of the Agreement. *Isby v. Bayh,* 75 F. 3d 1191, 1200 (7th Cir. 1996) ("the district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate."). Additionally, Lindsey, as Class Representative, approved the terms of the Agreement. In light of the foregoing, the Court should approve the Parties' proposed Agreement in this action.

### C. Lindsey's Service Award is Reasonable.

Lindsey's requested service award for his service as the Class Representative is reasonable, and ONEOK does not object to the same. Service awards to class representatives are permissible where they are fair and reasonable. *See In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012) (stating that courts often permit payment to class representatives above the amounts received by class members). *Purdie v. Ace Cash Express, Inc.,* No. 301CV1754L, 2003 WL 22976611, at *7 (N.D.Tex. Dec. 11, 2003) (finding a service of $16,655 for the named plaintiffs to be fair and reasonable); *Jones v. JGC Dallas LLC,* No. 3:11-CV-2743-O, 2014 WL 7332551, at *5 (N.D. Tex. Nov. 12, 2014), (approving $3,250 incentive awards to each of four class representatives out of a common fund of $920,000); *De Hoyos v. Allstate Corp.,* 240 F.R.D. 269 (W.D.Tex.2007) (approving award of $5,000 to named plaintiffs in Rule 23(b)(2) class action suit); *Camp v. Progressive Corp.,* No. Civ. A. 01–2680, 2004 WL 2149079 (E.D.La. Sept.23, 2004) (approving award of $10,000 to named plaintiff and awards of $1,000 to $2,500 to other FLSA collective action members who assisted in litigation out of $5.4 million settlement fund); *Purdie v. Ace Cash Express, Inc.,* No. Civ.A. 301CV1754L, 2003 WL 22976611 (N.D.Tex.2003) (approving award of $16,665 in incentive payments to the named plaintiffs out of $11 million settlement fund); *Henderson v. Eaton,* No. Civ. A. 01–0138, 2002 WL 3145728 (E.D.La. Oct. 25, 2002) (approving award of $3,000 to named plaintiff who participated extensively

in litigation); *In re Lease Oil Antitrust Litigation* (No. II), 186 F.R.D. 403 (S.D.Tex.1999) (approving awards of up to $10,000 per class representative out of $164.2 million settlement fund).

> When analyzing the propriety of a service award, courts have considered:
>
> > 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Humphrey v. United Way of Tex. Gulf Coast*, 802 F. Supp. 2d 847, 869 (S.D. Tex. 2011).

The proposed $7,500.00 service award to Lindsey is reasonable, and ONEOK does not oppose this amount. The service award represents a mere 0.66% of the Maximum Settlement Amount and is intended to recognize Lindsey's initiative and efforts as the Class Representative on behalf of the Settlement Class Members and the time and effort he contributed to this Lawsuit and the settlement over the last year. Indeed, Lindsey took a substantial risk in bringing the claims relating to ONEOK's alleged FLSA violations. In doing so, Lindsey faced potential retaliation and blackballing from prospective employers in the oil industry who, by merely performing a quick Google search of his name, may quickly see he sued his former employer for back wages. *Id.* Moreover, Lindsey expended significant effort and time in educating Class Counsel regarding his job experiences, compensation, and hours worked, as well as ONEOK's policies and procedures. *Id.* Likewise, Lindsey assisted throughout the nearly two-year litigation by providing documents and information related to his work for ONEOK, helping prepare the Motion for Conditional Certification and Court-Authorized Notice (including providing a detailed supporting declaration for the same) and participating in settlement discussions and the settlement approval process to help ensure the Settlement Class Members recover their alleged unpaid wages. *Id.* Lindsey also participated in numerous telephone conferences with Class Counsel and their staff over the course of the litigation. *Id.*

Because Lindsey took significant personal risks in representing the interests of the Settlement Class Members and worked diligently to ensure the Settlement Class Members could recover the wages they are allegedly due, the proposed $7,500.00 service award agreed to by the Parties is reasonable to compensate him for these inherent risks and his substantial efforts as the Class Representative on behalf of the Settlement Class Members.

### D. The Attorney's Fee to Class Counsel is Reasonable.

Lindsey's attorneys' fees are part of the bargained for Settlement. In accordance with the governing contingency fee agreement, the Parties agreed to set Class Counsel's fees at 40% of the Maximum Settlement Amount. Class Counsel's Fee Award was separately negotiated, independently and after settlement of Lindsey and the Settlement Class Members' recovery, and approval of this aspect of the Agreement is not required. ONEOK does not oppose Class Counsel's request for a Fee Award of up to 40% of the Maximum Settlement Amount.

The Fifth Circuit recognizes that contingency fees are desirable—particularly in common fund cases like this one—because it is predictable, encourages settlement, and reduces incentives for protracted litigation. *Union Asset Mgmt. v. Dell, Inc.*, 669 F.3d 632, 643-44 (5th Cir. 2012) ("district courts in this Circuit regularly use the percentage method blended with a Johnson reasonableness check, and for some it is the 'preferred method.'").

Within the Fifth Circuit, customary contingency fees for class funds have ranged from 33.33% to 50%. *See In re Bayou Sorrel Class Action*, No. 6:04CV1101, 2006 WL 3230771, at *1 (W.D. La. Oct. 31, 2006). In FLSA cases such as this, the "customary contingency" in the Fifth Circuit is within the range of 35 to 40%. *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001).

For these reasons, Plaintiffs believe a fee of 40% and costs up to $25,000.00, exclusive of Administrative Costs, are reasonable and necessary in this case.

3. **CONCLUSION**

For the foregoing reasons, the Parties request that the Court approve their Settlement, including all of the terms set forth in the Agreement, and dismiss Lindsey's claims with prejudice. A proposed order is attached hereto.

**Dated: November 12, 2021.**                    Respectfully submitted,

                                    **JOSEPHSON DUNLAP**

                                    By: */s/ Michael A. Josephson*
                                    **Michael A. Josephson**
                                    Texas Bar No. 24014780
                                    **Andrew W. Dunlap**
                                    Texas Bar No. 2407844
                                    **JOSEPHSON DUNLAP LLP**
                                    11 Greenway Plaza, Suite 3050
                                    Houston, Texas 77046
                                    713-352-1100 – Telephone
                                    713-352-3300 – Facsimile
                                    mjosephson@mybackwages.com
                                    adunlap@mybackwages.com

                                    **Richard J. (Rex) Burch**
                                    Texas Bar No. 24001807
                                    **BRUCKNER BURCH PLLC**
                                    11 Greenway Plaza, Suite 3025
                                    Houston, Texas 77046
                                    713-877-8788 – Telephone
                                    713-877-8065 – Facsimile
                                    rburch@brucknerburch.com

                                    **ATTORNEYS FOR PLAINTIFF &
                                    THE SETTLEMENT CLASS**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2021, I served the foregoing pleading on all parties and/or their counsel of record via this Court's CM/ECF electronic filing system in accordance with the Federal Rules of Civil Procedure.

                                    */s/Michael A. Josephson*
                                    **Michael A. Josephson**

## CERTIFICATE OF CONFERENCE

I hereby certify that prior to filing the instant Motion, I conferred with ONEOK's Counsel, who confirmed ONEOK is unopposed to the requested relief as evidenced by the Parties' attached Settlement Agreement. *See* Ex. 1.

/s/ *Michael A. Josephson*
**Michael A. Josephson**